570 P.2d 494

Paul R. HERNANDEZ, Appellant,

v.

BANCO DE LAS AMERICAS, a corporation, Appellee.

No. 12946–PR.

Supreme Court of Arizona, In Banc.

Oct. 5, 1977.

Stompoly & Even by John S. Stompoly and James L. Stroud, Tucson, for appellant.

Russo, Cox, Dickerson & Cartin by Jerold A. Cartin, Tucson, for appellee.

HOLOHAN, Justice.

This case involves a suit by appellant (Paul Hernandez) against appellee, Banco De Las Americas (Banco), for damages arising out of an alleged illegal breach of contract for Hernandez' employment by Banco in 1973. After four days of trial, the trial court directed a verdict for Banco on all issues raised in the complaint except for granting plaintiff five days' contract damages and assessed jury costs against him. Plaintiff appealed only that portion of the judgment denying him damages for breach of contract. Banco attempted to appeal the trial court's finding of a valid contract by a cross assignment of error.[1] The Court of Appeals reversed the judgment below.

We granted review because this case involves the need for clarification of certain

---

1. Because the bank in essence sought to enlarge the trial court's judgment on this issue, the proper procedure would have been to file a cross appeal, which the bank did not do. Therefore, under 16 A.R.S. Rules of Civil Procedure, rule 73(b), Banco is precluded from raising this issue. *Maricopa County v. Corporation Commission of Arizona*, 79 Ariz. 307, 289 P.2d 183 (1955).

statements made in *Tucson Federal Savings & Loan Ass'n v. Aetna Investment Corp.,* 74 Ariz. 163, 245 P.2d 423 (1952) regarding corporate employment contracts. The opinion of the Court of Appeals is vacated.

Appellee Banco is a banking corporation which has been licensed in Arizona since 1971. Pursuant to Article I, Section 1 of Banco's By-Laws, the bank's annual meeting of stockholders was held in early June of 1972, and a Board of Directors was elected to serve for a term of one year. On July 19, 1972 the Board of Directors entered into a written contract with Morris Herring (one of the original incorporators) calling for the employment of Herring as Bank President for a period of one year at a salary of $25,000.

Dissention apparently developed between Herring and a majority of the Board during the year, and on April 5, 1973, Herring wrote the Chairman of the Board setting forth the terms of an agreement reached between him and the Board regarding his resignation. The agreement, as approved by the Board, included *inter alia* a provision that Herring was to be paid a lump sum at the time of his resignation representing "the unpaid balance of my annual salary due under the terms of my contract dated July 19, 1972." Eleven of the fifteen Board members approved and accepted Herring's resignation on the stated terms at a special meeting of the Board of Directors of Banco held on April 8, 1973.

The Chairman of the Board thereupon appointed a committee comprised of several members of the Board to search for a permanent president for the bank. The record reflects that during the time that the committee was searching for a new bank president, Morris Herring launched a proxy fight in an attempt to elect a new board.

Meanwhile, the committee's search for a president had come to fruition in the selection of the appellant, Paul Hernandez, as President of the bank on June 1, 1973. The corporate minutes reflect that a special meeting of the Board of Directors of the bank, attended by nine members, was held on June 1, 1973. At that meeting the Chairman of the Board recommended that a one-year contract be entered into between Banco and Hernandez. All nine members of the Board of Directors in attendance at the special meeting on June 1, 1973 voted to offer Hernandez a contract.[2]

Banco by and through its Chairman, George Sandoval, then entered into a written contract of employment wherein Hernandez was to serve as President of the bank for one year commencing June 1, 1973 and terminating May 31, 1974. In addition to the one-year term of employment the contract provided *inter alia* that Hernandez accepted and agreed to his hiring, engagement and employment in accordance with the customary requirements of the position, including the Articles of Incorporation, the By-Laws and appropriate regulatory agency directives. The contract also provided that its interpretation would be according to the laws of the State of Arizona.

Hernandez began his duties as President of the bank on June 1, 1973. On June 4, 1973, however, the Herring faction was successful in its proxy fight and a Board favorable to it was elected. On June 8, 1973 the newly elected Board of Directors met, discharged appellant Hernandez, and reappointed Morris Herring President of the bank.

This case presents essentially one issue, namely, whether the Board of Directors had authority to enter into a valid and binding employment contract with appellant which would be binding beyond its term of office.

There is no doubt that the Board of Directors of Banco had the express authority to make and enter into valid and binding contracts. The main contention of Banco is that the Board as constituted prior to June 4, 1973 did not have the authority to enter into a valid employment contract binding the subsequent Board. Banco has relied heavily on the statement in *Tucson Federal Savings & Loan Ass'n v. Aetna Investment Corp., supra:*

> Board members were present at the meeting, the bank's quorum requirements were met.

---

2. The vote of the nine directors in attendance was unanimous. Since nine of the fifteen

"The directors of the Tucson Federal are elected for a three-year term, while this contract was to remain in force and effect for ten years from the date of its execution. It is contended by Tucson Federal that the contract is void for the reason that it extends and binds the corporation beyond the terms of the then acting officers and directors. To support this proposition we are referred to *Edwards v. Keller*, Tex.Civ.App., 133 S.W.2d 823; *Clifford v. Firemen's Mut. Benev. Ass'n*, 232 A.D. 260, 249 N.Y.S. 713; *Massman v. Louisiana Mfg. Cooperage Co.*, 177 La. 999, 149 So. 886; *Kline v. Thompson*, 206 Wis. 464, 240 N.W. 128. We have examined these cases and find they all involve employment contracts whereby the corporate officers have attempted to employ a person for a period extending beyond their terms. The courts held that the contracts were void because one board of directors cannot bind subsequent boards as to future personnel to carry out administrative details of the corporation. These cases limit the application of the rule to employment contracts, which we believe is sound." 74 Ariz. at 170, 245 P.2d at 427.

*Tucson Federal* concerned the effect to be given a contract to buy and sell insurance which was of 10 years' duration, where the board which negotiated the contract served for a three-year term. Our comments on corporate employment contracts must be considered dicta. This is the first instance in which we have been faced with the issue of an employment contract extending beyond the term of the Board of Directors.

Under the circumstances we find no obstacle to considering the matter as one of first impression in this jurisdiction.

It is asserted by Banco that the contract made between the Board of Directors and Hernandez was void because it was in contravention of the By-Laws which provide that officers are to serve for one year during the term and at the pleasure of the Board of Directors.[3] We note that the identical By-Law was in effect at the time of Herring's contract.[4]

There are two theories which support the conclusion that the Hernandez contract was valid although it extended beyond the Board's term. One theory centers on the conclusion that the Board by its prior acts with regard to Herring informally altered or modified the By-Laws. The other theory concludes that because the Board had the authority under the By-Laws to alter the By-Laws at any time, the Hernandez contract was *pro tanto* a modification which prevailed over the By-Laws.

The Articles of Incorporation gave the Banco Board of Directors the power to amend by-laws;[5] further, Article X of the By-Laws provides:

"The Directors may, at any regular meeting, alter or amend these By-Laws, in a way not inconsistent with the law, provided that the number of those voting in favor of such amendment is equal to or greater than a majority of the whole Board of Directors; . . ."

It is accepted law that by-laws may be amended informally as well as for-

---

3. Article IV § 1 of the By-Laws provides as follows: "TERM OF OFFICE. The President, Vice-President, Cashier or Assistant Cashiers shall hold office during the term of the board by whom they are elected, subject to the power of the board to remove them at its discretion. Any vacancies occurring in any of the said offices shall be filled by the Board of Directors."

4. Herring's contract ran from July 19, 1972 to July 19, 1973. The Board's term under the Articles of Incorporation (Article VII) ran from the first Monday of June 1972 to the first Monday of June 1973.

5. Article VII of the Articles of Incorporation provides: "In furtherance, and not in limitation of the powers conferred by law, the board of directors is expressly authorized to adopt, amend and rescind by-laws for the corporation by a vote of a majority of the board of directors, until and unless otherwise provided by resolution of the shareholders, and such by-laws be binding on the directors, officers, shareholders and all parties contracting or in any way dealing with the corporation. The board of directors is further expressly authorized to fill vacancies in any office or in the board of directors resulting from any cause."

mally, orally or in writing . . . by acts as well as by words, and may be evidenced by a course of proceeding or conduct on the part of the corporation inconsistent with the by-laws claimed to have been amended or repealed. *See Bay City Lumber Co. v. Anderson*, 8 Wash.2d 191, 111 P.2d 771 (1941). Moreover, when a Board of Directors has the power to adopt by-laws, it has power to waive those adopted,[6] and we therefore hold that when the Board entered into a one-year contract with Herring which extended beyond the then-Board's term, the By-Law at issue was informally modified, or waived. *See Realty Acceptance Corp. v. Montgomery*, 51 F.2d 636, 639 (3rd Cir. 1930); *United Producers and Consumers Co-op v. Held*, 225 F.2d 615 (9th Cir. 1955).

When the Board agreed to pay the balance of Herring's salary and benefits in order to cancel his contract before it expired, we conclude that the Board recognized that there was a valid employment contract and Herring was entitled to be compensated.

Banco argues that the Board of Directors has the power under the By-Laws to remove an officer at its discretion.[7] This power of removal, however, is subject to rights of the officer under the employment contract. The power to remove an officer of the corporation does not carry with it the power to terminate a valid employment contract without liability. *See Cuppy v. Stollwerck*, 216 N.Y. 591, 111 N.E. 249; 158 A.D. 628, 143 N.Y.S. 967 (1916); *In re Para-mount Publix Corporation*, 90 F.2d 441 (2nd Cir., 1937). It must be remembered that employment contracts are designed to be a benefit to both an officer and a corporation. The corporation wishes to secure the special services of the officer; on the other hand the officer wishes to have some financial security. If the corporation may ignore the contract at will, so also could the officer leave the corporation at any time without liability no matter how essential or valuable his services. Such a result would be disruptive of modern business practice. *See In re Paramount Publix Corporation*, 90 F.2d 441, 443 (2nd Cir., 1937).

Most commentators now are in agreement that modern business practice mandates that parties must be bound by the contracts they enter into absent fraud or duress. The Arizona legislature has recently adopted this view.[8]

We believe that the contract here was for a reasonable period of time particularly when viewed against the length of time for which the prior contract with Herring was made. The Board had the authority to make and enter into contracts on behalf of the corporation, and it had the authority to alter or amend the corporation By-Laws. There were no statutes in effect at the time the contract was entered into to bar its legality.[9]

Judgment of the Superior Court is reversed and this case is remanded for a new trial on the issue of damages.

CAMERON, C. J., STRUCKMEYER, V. C. J., and HAYS and GORDON, JJ., concur.

---

**6.** *Hill v. American Co-operative Ass'n*, 195 La. 590, 197 So. 241 (1940).

**7.** See footnote 3, *supra*.

**8.** *See* Title 10, Corporations and Associations, A.R.S. § 10–051 which provides: "Any officer or agent may be removed by the board of directors whenever in its judgment the best interests of the corporation shall be served thereby, but such removal shall be without prejudice to the contract rights, if any, of the person so removed. Election or appointment of an officer or agent shall not of itself create contract rights."

**9.** Although no statutes regarding this matter were in effect at the time this action arose, future banking corporation boards will have to consider the ramifications of A.R.S. § 6–417(7) (1974) which we note, but do not comment on. That section provides: "The board of directors may adopt or amend by-laws, but no by-law shall be effective until it has been submitted to and approved by the superintendent as being in conformity with this chapter. Each adopted amendment shall be subject to the same inquiry by the superintendent as the corresponding provision in the original by-laws of the association. The superintendent may require approval by a majority vote of the members for an amendment changing the location of the business office of the association."