[No. 52183–2.   En Banc.   May 1, 1986.]

RALPH O. BRADY, *Appellant,* v. THE DAILY WORLD, *Respondent.*

*Walstead, Mertsching, Husemoen, Donaldson & Barlow,* by *John A. Barlow,* for appellant.

*James R. Dickens* (of *Karr, Tuttle, Koch, Campbell, Mawer & Morrow, P.S.*), for respondent.

BRACHTENBACH, J.—Plaintiff was employed as a pressman at defendant's newspaper, The Daily World. He was discharged on December 7, 1981, after 32 years of employment there. Plaintiff sued for damages, alleging: (1) termination of employment without cause when an express or implied contract required good cause; (2) termination based solely or for the most part upon plaintiff's age; and (3) termination based upon a perceived handicap. The trial court granted defendant's motion for summary judgment on all claims. We reverse on the first claim—the contract claim—but affirm the trial court on the age and handicap discrimination claims.

Regarding the first claim, there is wide disparity in the evidence. Plaintiff alleges an express or implied employment contract, a term of which provided that he would be discharged only for good cause, and further alleges that no good cause existed. Defendant, on the other hand, contends that its employment rules prohibited an employee being intoxicated on the job and that defendant was under the influence or intoxicated, was warned thereof, and was discharged solely for that reason. The trial court was presented with affidavits, parts of depositions and exhibits. From this material we must determine whether there is a genuine issue of material fact, considering all evidence and reasonable inferences therefrom in favor of the nonmoving party. *Wilson v. Steinbach,* 98 Wn.2d 434, 656 P.2d 1030 (1982). The pertinent evidence may be summarized as follows.

Plaintiff's depositions and affidavit claim that he never drank on the job, that he was never intoxicated at work, that he occasionally drank one or two beers with dinner

several hours before reporting for work on the weekend evening shift, that on one occasion he was told not to come to work drunk, and that no one ever told him not to come to work after drinking his one or two beers. Plaintiff also claims that he was told that he was doing a good job, that so long as he did so he would have a job, and that he would be discharged only for cause.

Written reports in plaintiff's personnel file alleged that on three or four occasions plaintiff appeared to be under the influence, that sometimes his speech was slurred, and that he was unsteady at times. However, a month before discharge a comprehensive evaluation by his supervisor did not mention drinking, rated him above or well above minimum job requirements (the latter included "safety", which was an expressed employer concern about drinking), and stated that plaintiff was capable of running the entire pressroom operation. Plaintiff was the assistant pressroom foreman until demoted for errors in production, with no mention of drinking as a factor.

About 8 years before discharge, plaintiff acknowledged in writing that he had received, read, and understood the personnel handbook and that violation of those rules might make him subject to immediate termination. The handbook contained the following section:

### DISMISSAL FOR CAUSE

When an employee joins the company, we hope he/she will be associated with us for a long time. Unfortunately, some employees do not meet the standards of conduct and performance which we expect. If this happens, it may become necessary to effect a termination.

Any decision which requires such action is made only after careful consideration of all known facts. Any of the following may be considered sufficient grounds for dismissal.

. . .

Intoxication or drug abuse.

. . .

An employee dismissed for cause forfeits all privileges and benefits.

Clerk's Papers, at 199–200.

Defendant alleges that on December 5, 1981, a report from plaintiff's supervisor states that plaintiff was "under the influence of alcohol, speech and motion" [sic] , and that while the supervisor did not detect any odor of alcohol, he was of the opinion that plaintiff had been drinking. Clerk's Papers, at 192. Plaintiff worked the entire shift on December 5. Plaintiff was asked about his condition. Plaintiff said he had had a beer 3 hours before coming to work. Two days later, plaintiff's supervisor told his superior of the December 5 incident. It was decided then that plaintiff would be terminated for being under the influence on December 5 and for earlier incidents of drinking and warnings based upon prior reports. Plaintiff was advised that he should seek professional help, and if he did, his job would be held open for 6 weeks. Plaintiff was told, and he denied, that he was an alcoholic.

Defendant's management testified that the policy of not working under the influence was a strictly enforced rule, that the employee was given at least two verbal or written warnings, that plaintiff was discharged solely for appearing for work under the influence of alcohol, and that age or handicap was not a consideration.

Before analyzing the factual issues and inferences therefrom, we turn to the law. *Thompson v. St. Regis Paper Co.,* 102 Wn.2d 219, 685 P.2d 1081 (1984) is controlling. There we delineated principles applicable in this case.

> [W]e hold that employers may be obligated to act in accordance with policies as announced in handbooks issued to their employees. When the employment relationship is not evidenced by a written contract and is indefinite in duration, the parties have entered into a contract whereby the employer is essentially obligated to only pay the employee for any work performed. In this contractual relationship, the employer exercises substantial control over both the working relationship and his employees by retaining independent control of the work relationship. Thus, the employer can define the work relationship. Once an employer takes action, for whatever

reasons, an employee must either accept those changes, quit, or be discharged. Because the employer retains this control over the employment relationship, unilateral acts of the employer are binding on his employees and both parties should understand this rule.

However, absent specific contractual agreement to the contrary, we conclude that the employer's act in issuing an employee policy manual can lead to obligations that govern the employment relationship. Thus, the employer's reason for unilaterally issuing an employee policy manual or handbook, purporting to contain the company policy vis–a–vis employee relations, becomes relevant.

We are persuaded that the principal, though not exclusive, reason employers issue such manuals is to create an atmosphere of fair treatment and job security for their employees. . . . It would appear that employers expect, if not demand, that their employees abide by the policies expressed in such manuals. This may create an atmosphere where employees *justifiably rely* on the expressed policies and, thus, justifiably expect that the employers will do the same. Once an employer announces a specific policy or practice, especially in light of the fact that he expects employees to abide by the same, the employer may not treat its promises as illusory.

Therefore, we hold that if an employer, for whatever reason, creates an atmosphere of job security and fair treatment with promises *of specific treatment in specific situations* and an employee is induced thereby to remain on the job and not actively seek other employment, those promises are enforceable components of the employment relationship. We believe that by his or her unilateral objective manifestation of intent, the employer creates an expectation, and thus an obligation of treatment in accord with those written promises. *See* Restatement (Second) of Contracts § 2 (1981) (promise is a manifestation of intention *to act or refrain from acting in a specified way,* so made as to justify a promise in understanding a commitment has been made).

(Citations omitted.) *Thompson,* at 229–30.

Our first inquiry is whether the *Thompson* holdings should be applied retroactively to this case. While this case was pending in the Court of Appeals, a stay was entered pending the decision in *Thompson.* Soon thereafter,

*Thompson* was decided. The employer argues that *Thompson* was such a dramatic change in the law that it should be applied prospectively only. We disagree.

That the terminable at will doctrine was subject to possible modification or even abrogation was clearly indicated in *Roberts v. ARCO,* 88 Wn.2d 887, 898, 568 P.2d 764 (1977), which was decided approximately 7 years before *Thompson.* We stated in *Roberts* that the future of the doctrine was a compelling issue but left a definitive ruling for another day and different facts. Parenthetically we note that the employee's able attorney in *Roberts* is the employer's attorney in this case.

Furthermore, it would be unjust, under the circumstances, to deny plaintiff the benefits of the *Thompson* holdings. The appeal in *Thompson* was pending when this case was argued. Plaintiff urged a comparable theory in the trial court—*i.e.,* modification of the terminable at will rule. Briefing was complete, including reliance upon cases ultimately considered by the *Thompson* court. The trial court correctly felt bound by *Roberts* and *Parker v. United Airlines, Inc.,* 32 Wn. App. 722, 649 P.2d 181 (1982). The matter was decided on summary judgment so no actual trial will be duplicated. Plaintiff's cause on appeal was held in abeyance until *Thompson* was decided. Under the facts of this case, we hold that the *Thompson* principles apply.

However, our inquiry does not end there. Even if *Thompson* is controlling, did plaintiff, for summary judgment purposes, make out a case? We hold that he did, considering the evidence and inferences in his favor as we must.

The personnel handbook refers to dismissal for cause after careful consideration of all known facts. Whether any of these policies amounted to promises of specific treatment in specific situations, and if so, whether plaintiff justifiably relied upon any of these promises are questions of fact which remain to be proven.

Furthermore, the pertinent rule here concerned dismissal

for intoxication. Plaintiff denies ever being intoxicated on the job. The employer's records and affidavits often refer to "being under the influence". Whether that, if true, was the equivalent of intoxication is a question of fact which remains to be proven.

In addition, the incident on December 5 which triggered plaintiff's discharge raises conflicting inferences in that plaintiff was allowed to work his entire shift even though allegedly under the influence of alcohol. Plaintiff denies consumption of alcohol except for one or two beers with dinner. Again, a factual issue exists.

Finally, the employer's evaluation of plaintiff, shortly before discharging him, showed performance at or above minimum job requirements—particularly as to safety, which was the employer's main concern about intoxication. That evaluation evidenced no concern about drinking even though all but one alleged incident had occurred prior to that evaluation. Those matters, coupled with plaintiff's testimony that he was told that he was doing a good job and would be employed so long as he so performed, raise issues of fact as to conditions of employment and cause for termination.

Consequently, there are genuine issues of material fact within the rationale of *Thompson v. St. Regis Paper Co., supra;* summary judgment on this cause of action was error.

As a separate cause of action plaintiff alleges that his termination constituted age discrimination under RCW 49.60. Plaintiff does not specify the statute relied upon but presumably it is RCW 49.60.180(2), which prohibits discharge from employment because of age. Although plaintiff at age 57 was within the protected age group (*see* RCW 49.44.090), he failed to present any evidence that age was a factor in his termination or that he was otherwise discriminated against because of his age. He admitted that he had no knowledge or evidence of any practice of discharging persons because of their age. The only evidence of the reasons for discharge was from the employer, which relied

solely upon violation of the company policy and denied any connection to age.

Plaintiff nonetheless argues that he has established a prima facie case of age discrimination which, under the criteria set forth in *Roberts v. ARCO, supra* at 892, is met by evidence that he was within the protected class, was discharged, was doing apparently satisfactory work, and was replaced by a younger person. Even if we assume that the first three criteria were met, the last one was not. There is no affidavit or deposition as to plaintiff being replaced by someone outside the protected age group. There is a letter from the employer's counsel to plaintiff's attorney as to replacement, but the trial court's order does not reflect that the letter was considered; it is thus not part of the record. Even if the letter had been properly before the trial court, it does not establish the necessary fact. Initially, plaintiff's duties were assumed by an existing worker who was within the protected age group. The employer searched for an experienced pressman without regard to age. None was found or hired until 18 months later. Plaintiff thus fails in his proof and summary judgment on this allegation for defendant was correct.

Plaintiff finally alleges that he was discriminated against because the employer perceived that his alleged alcoholism was a handicap. We need not and do not decide whether alcoholism is a handicap within the confines of RCW 49.60.180. Because of safety factors involving the employee and co-workers, freedom from intoxication in this case was a bona fide occupational qualification. *Rose v. Hanna Mining Co.*, 94 Wn.2d 307, 616 P.2d 1229 (1980). Plaintiff's own deposition testimony established that. Plaintiff's discharge resulted from the employer's belief that plaintiff violated the rule against intoxication on specific occasions. These isolated, specific incidents are not the equivalent of perceiving that plaintiff suffered the disease of alcoholism and that he was discharged for that perceived condition. Summary judgment on the claim was proper.

In sum, we reverse on the issue of termination for cause

and affirm on the claims based upon age and handicap discrimination.

DOLLIVER, C.J., and UTTER, DORE, PEARSON, ANDERSEN, CALLOW, GOODLOE, and DURHAM, JJ., concur.