[No. 8192–3–III.   Division Three.   December 22, 1987.]

ROBERT ST. YVES, *Appellant,* v. MID STATE BANK, *Respondent.*

*John Hotchkiss* and *Carlson & Drewelow, P.S.,* for appellant.

*Michael Tabler,* for respondent.

McINTURFF, C.J.—The case was dismissed with prejudice pursuant to CR 12(b(6) for failure to state a claim on which relief could be granted. Upon finding it would be error to dismiss this case under either CR 12(b)(6) or upon summary judgment, we reverse and remand for trial.

Robert St. Yves was employed as president of Mid State Bank from June 1, 1984, until May 31, 1986. He was terminated on May 5, 1986, without being notified his job performance was unsatisfactory. His employment agreement with Mid State Bank provided for an initial term from June 1, 1984, to May 31, 1986. The term of the agreement automatically renewed for successive 1–year terms if either party did not advise the other of nonrenewal with 60 days' written notice. The employment agreement also provided Mr. St. Yves' right to compensation ended upon his termination for any reason and that his termination at any time with or without cause or notice shall not constitute a breach of the agreement.

Mid State Bank also had a written personnel policy manual, revised January 1984, which provided an employee grievance procedure for employees who felt they had been treated unfairly. The procedure included informal counseling if an employee's performance or conduct failed to meet specified requirements. Formal written warning and counseling were provided in the event of a repeated or serious problem either in performance or conduct. A probation period was provided in case of major job performance or conduct problems or continued lack of improvement in the performance or conduct. Discharge occurred if the employee failed to achieve the specified results within the probation period.

An affidavit of Keith Brighton, former president and director of Mid State Bank, states he implemented the written personnel policy manual and that it was his intent that all employees, including the president, be covered by the manual. He stated the board of directors, of which he was a member, never discussed eliminating the president's position from the coverage of the manual and its grievance

procedures. However, the bylaws of Mid State Bank stated the president serves "at the pleasure of the board."

The first issue is whether the trial court erred in dismissing this claim for wrongful discharge and/or breach of contract for failure to state a claim upon which the court could grant relief. CR 12(b)(6) permits a court to dismiss a case on motion for failure to state a claim upon which relief can be granted. An action should be dismissed on a CR 12(b)(6) motion if, accepting the plaintiff's allegations as true, the court concludes beyond a reasonable doubt that no set of facts consistent with the complaint could be proved which would entitle the plaintiff to relief. *Corrigal v. Ball & Dodd Funeral Home, Inc.*, 89 Wn.2d 959, 961, 577 P.2d 580 (1978); *Springer v. Rosauer*, 31 Wn. App. 418, 420, 641 P.2d 1216, *review denied*, 97 Wn.2d 1024 (1982). In contrast, a motion for summary judgment should be granted only when, viewing the facts most favorably to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 221, 685 P.2d 1081 (1984); *Yakima Fruit & Cold Storage Co. v. Central Heating & Plumbing Co.*, 81 Wn.2d 528, 530, 503 P.2d 108 (1972).

This analysis can be divided into three questions: (1) Did the directors have the power[1] to enter an employment contract which limited their power to discharge officers at their pleasure? (2) Does Mr. St. Yves' employment contract give him a right to continued employment? (3) Does Mid State Bank's personnel policy afford Mr. St. Yves the right to be terminated only for justifiable cause?

1. The power of the directors.

A bank corporation has the power:

To elect directors who, *subject to the provisions of the corporation's bylaws, shall have power to appoint such*

---

[1]Although the statute and bylaws speak of "power", we find no distinction between this term and the concept of authority from agency law. However, for the sake of consistency we will use the term power hereafter.

*officers as may be necessary or convenient,* to define their powers and duties *and to dismiss them at pleasure,* and who shall also have general supervision and control of the affairs of such corporation.
(Italics ours.) RCW 30.08.140(5).

Article 9, section 1 of the bylaws of Mid State Bank provides: "These by–laws may be amended at any regular or special meeting of the shareholders in accordance with Article I . . ." Article 3, section 9(A) empowers the board of directors "[t]o appoint a president [and other officers], all of whom shall *serve at the pleasure of the board . . .*" (Italics ours.)

Mr. St. Yves argues his employment agreement was not properly terminated, as such he has a continued right of employment and is entitled to damages for breach of contract. He argues the employment agreement is not precluded by RCW 30.08.140(5) because the statute recognizes the bylaws may provide otherwise. Nor do the bylaws preclude Mr. St. Yves' claim because the employment contract and personnel policy manual amended the bylaws.

Mid State Bank contends the statutory "at will" employment of Mr. St. Yves as president is not altered by his employment agreement nor by the personnel policy manual established by Mid State Bank.

We found no case in Washington which construes RCW 30.08.140(5). On its face, however, the language of RCW 30.08.140(5) gives the corporation power to elect directors who, *subject to the corporation's bylaws,* shall have the power to appoint officers, define their duties, and dismiss them at pleasure. Ergo, if the bylaws provide otherwise, the directors have no power to dismiss officers at pleasure.

■ Bylaws may be modified by custom, usage, or acquiescence or by unanimous consent subject to prevention by statute or charter. *Bay City Lumber Co. v. Anderson,* 8 Wn.2d 191, 204, 111 P.2d 771 (1941). A corporation may also waive bylaws expressly or impliedly. *Bay City Lumber*

*Co.,* at 204. A waiver occurs if a corporation acts or contracts in disregard of a bylaw with the consent or acquiescence of the stockholders. Where a bylaw required that officers' salaries be fixed by a board of trustees, it was waived by acts of the president in fixing the salaries because the president's acts were assumed to be known to the trustees and stockholders. *Bay City Lumber Co.,* at 204–05.

Mr. St. Yves cites *Hernandez v. Banco De Las Americas,* 116 Ariz. 552, 570 P.2d 494, 497–98 (1977) where the Supreme Court of Arizona held a 1–year employment contract between a bank board of directors and Mr. Hernandez, as president of the bank, was valid even though it extended beyond the term of the board. In *Hernandez,* the board had the authority to amend a bylaw providing that officers were to serve for the term of the board, subject to the power of the board to remove them at its discretion. In *Hernandez,* at 555–56, the court noted:

> It is accepted law that by–laws may be amended informally as well as formally, orally or in writing . . . by acts as well as by words, and may be evidenced by a course of proceeding or conduct on the part of the corporation inconsistent with the by–laws claimed to have been amended or repealed.

*Hernandez,* at 498, cites *Bay City Lumber Co.* as authority for this principle.

In *Hernandez* the bank argued it had the power under the bylaws to remove an officer at its discretion. *Hernandez,* at 556, stated:

> This power of removal, however, is subject to rights of the officer under the employment contract. The power to remove an officer of the corporation does not carry with it the power to terminate a valid employment contract without liability.

The policy underlying the rule is that employment contracts are designed to benefit both an officer and the corporation, ensuring the services of the officer to the corporation

while providing some financial security to the officer. *Hernandez,* at 556.

The difficulty of applying the logic of *Hernandez* in this case is that Mid State Bank's board of directors had no express authority to amend the bylaws; rather the bylaws provide *shareholders may* amend the bylaws at any regular or special meeting. Article 9, section 1. Notably, the language of the bylaws (shareholders *may* amend the bylaws) does not preclude amendment by directors, although it does not specifically empower directors to amend the bylaws. But, *Bay City Lumber Co.,* at 204, provides waiver of a bylaw results if a corporation acts or contracts in disregard of a bylaw with the consent or acquiescence of the stockholders and that nonuse of a bylaw for a sufficient length of time to bring it home to the stockholders will work its abrogation. Here Mid State Bank entered an employment contract on June 1, 1984, with Mr. St. Yves for an initial 2–year term. Termination by the board did not occur until May 5, 1986. In *Bay City Lumber Co.* the president had no power under the bylaws to authorize salaries, yet authorization of the salaries by the president was an act that must have been known to the shareholders. Here the overt act by the directors of Mid State Bank was the formal employment contract with Mr. St. Yves. The existence of this agreement for almost 2 years before his termination without objection by the stockholders is acquiescence to the waiver of the bylaw that officers serve at the pleasure of the board.[2]

---

[2]Mid State Bank argues Mr. St. Yves may not argue amendment of the Bank's bylaws because he did not raise this issue at the trial court level either in briefs or oral arguments, citing *Herberg v. Swartz,* 89 Wn.2d 916, 578 P.2d 17 (1978). *Herberg,* at 925, held an issue, theory or argument not presented at trial will not be considered on appeal. The oral arguments are not a part of the record on appeal. Mid State Bank in its memorandum of authorities in support of Mid State Bank's motion for dismissal argued Mr. St. Yves' termination was enforceable under the termination at will language in the bylaws. Mr. St. Yves in his memorandum of points and authorities in opposition to defendant's motion for summary judgment argues the written employment contract and the personnel policy manual are the basis for his claim to continued employment. Issue 2, raised

Mid State Bank further argues federal cases interpreting federal statutes governing banks have consistently held an employee covered by one of the federal statutes and appointed and dismissed by the board of directors cannot sue under common law theories of wrongful discharge.[3] Mid State Bank does not contend this dispute is governed by federal law and only argues federal case law is applicable

---

by Mr. St. Yves in this memorandum, is "[w]hether contract rules of modification, estoppel or *waiver* precludes summary judgment by the Bank when viewing the facts in the light most favorable to the non–moving party." (Italics ours.) Thus waiver, but not amendment of the bylaws, was a theory argued by Mr. St. Yves, although he did not argue specifically the applicability of *Bay City Lumber Co.,* nor even mention the bylaws in his analysis under this issue. However, because waiver is also a factual issue, under the rule that a CR 12(b)(6) dismissal is not proper if any set of facts can be assumed that would support the plaintiff's argument, this objection is without merit. *Springer v. Rosauer,* 31 Wn. App. at 420.

[3]The directors of a national bank chartered under federal law have the statutory power to dismiss officers at their pleasure; this has been construed to override any contract to employ for a fixed term. *Kozlowsky v. Westminster Nat'l Bank,* 6 Cal. App. 3d 593, 86 Cal. Rptr. 52, 53–54 (1970); *Kemper v. First Nat'l Bank,* 94 Ill. App. 3d 169, 418 N.E.2d 819, 821 (1981). *Kemper,* at 171, explained:

> The power to contract for a definite term is consistent with the power to discharge an employee before the end of that term. . . . Here, the plaintiff accepted his employment with knowledge, actual or imputed, of the board's authority to dismiss him at its pleasure. Once the board's approval of his appointment was withdrawn, his contractual status as an employee vanished, and he had no legal right upon which to base his claim.

The court declined to consider policy arguments that an act designed to protect bank customers in the days before federal deposit insurance had no place in the modern banking industry which needs to be able to offer employment prospects to attract management of high quality. *Kemper,* at 171.

Likewise, attempts to create employment rights from independent sources such as employment manuals are void under the Federal Home Loan Bank Act which allows banks to dismiss at pleasure bank officers. *Inglis v. Feinerman,* 701 F.2d 97 (9th Cir. 1983), *cert. denied,* 464 U.S. 1040, 79 L. Ed. 2d 168, 104 S. Ct. 703 (1984).

In *Bollow v. Federal Reserve Bank,* 650 F.2d 1093 (9th Cir. 1981), *cert. denied,* 455 U.S. 948, 71 L. Ed. 2d 662, 102 S. Ct. 1449 (1982), the Ninth Circuit construed Federal Reserve Act language "dismiss at pleasure such officers" to preempt employee claims of wrongful discharge based on state law. *Bollow,* at 1096, involved a discharge of a bank employee for inability to get along with co–workers. The court concluded the bank had substantially complied with its published personnel manual even if it were to assume the bank's authority to dismiss employees was limited by the personnel manual. *Bollow,* at 1098.

by analogy. We find no persuasive policy reason to apply federal case law to construe state banking statutes. However, there is a policy reason not to follow federal case law construction because employment contracts should be encouraged as they benefit both employer and employee. *Hernandez,* at 556. Further, the language of the federal statutes does not permit amendment by the bylaws of the statutory power of the directors to discharge an officer at pleasure, unlike RCW 30.08.140(5) which explicitly does allow such an amendment. We hold the directors had the power to enter an employment contract which limited their power to discharge an officer at their pleasure.

    2. Whether Mr. St. Yves' employment contract gives him a right to continued employment.

The trial court concluded Mr. St. Yves' employment contract expressly entitled Mid State Bank to discharge Mr. St. Yves without notice or cause and that such did not constitute a breach of the employment contract. Mr. St. Yves was notified he was being terminated on May 5, 1986. Under clause 2 of his employment contract, the term of the contract was automatically renewed for 1 year unless either party gave 60 days' written notification that the employment would not be renewed. Mr. St. Yves argues his contract was not properly terminated, therefore, he is entitled to damages for the unexpired 1–year term of the contract. Mid State Bank argues clause 10 of the contract gives Mid State Bank the right to terminate Mr. St. Yves at any time, during any term of the contract, without cause or notice and that such termination will not constitute a breach of the agreement.

There is language in the contract to support each party's position:

II
TERM

    The initial term of St. Yves' employment shall be from the 1st day of June, 1984 to the 31st day of May, 1986. Said term shall be automatically renewed for successive one year terms unless either party advises the other with

60 days written notification that the employment, or this agreement in its then current form, will not be renewed at the end of the term.

  . . .

## X
### TERMINATION

St. Yves' right to compensation will cease upon termination of his employment for any reason, and the term hereof shall thereupon end. Upon such termination, he will be entitled to receive his base salary accrued to the date of termination together with such additional fringe benefits which he would otherwise have been entitled to receive for such year, accrued to the date of termination.

St. Yves' termination by bank at any time, during any term of employment, with or without cause or notice, shall not constitute a breach of this agreement by bank.

The question then becomes: Does a contract provision for an established term of employment conflict with a provision allowing termination at any time during that term without cause or notice?

In *Armstrong v. Richland Clinic, Inc., P.S.,* 42 Wn. App. 181, 185, 709 P.2d 1237 (1985), *review denied,* 105 Wn.2d 1009 (1986) the court found unambiguous language in a written contract establishing the employment for 1 calendar year, terminable at will upon 30 days' notice prior to expiration of that time. However, the contract in *Armstrong* ran from January 1, 1980, for 1 year at which time it would be automatically renewed unless either party gave notice 30 days prior to expiration of the year. *Armstrong,* at 183. The employer gave notice on November 25, 1980, so unlike Mr. St. Yves' contract, the employment contract was properly terminated. *Armstrong,* at 183. *See also Kemper v. First Nat'l Bank,* 94 Ill. App. 3d 169, 418 N.E.2d 819, 821 (1981), in which the court found the power to contract for a definite term consistent with the power to discharge an employee before the end of the term. Second, in *Armstrong* only the employee thought the employment manual applied to him. In this case both Mr. St. Yves and his predecessor thought the personnel policy manual applied to the president's position. Third, in *Armstrong* there was no

ambiguity; here Mr. St. Yves argues the employment contract was ambiguous.

■ To resolve the ambiguity Mr. St. Yves argues the court should look at Mid State Bank's personnel policy manual which provides procedures for discharge thus creating a right to continued employment unless discharged for cause. He further argues, despite an integration clause in the contract, that the personnel policy manual is admissible as parol evidence to resolve the ambiguity. *Olsen Media v. Energy Sciences, Inc.,* 32 Wn. App. 579, 584, 648 P.2d 493, *review denied,* 98 Wn.2d 1004 (1982) cited by Mr. St. Yves, supports his contention. We agree with Mr. St. Yves that the two clauses are ambiguous; the court should look at the personnel policy manual to resolve the ambiguity.

> 3. Does Mid State Bank's personnel policy manual create a right to continued employment unless discharged for cause?

■ Even if the clauses were not ambiguous, Mr. St. Yves argues the personnel policy manual creates an independent basis for his wrongful discharge claim. In *Thompson v. St. Regis Paper Co.,* 102 Wn.2d at 233, the court held:

> An employment contract indefinite as to duration, is terminable at will by either the employee or employer. But such a contract is terminable by the employer only for cause if (1) there is an expressed or implied agreement to that effect or (2) the employee gives consideration in addition to the contemplated service. Moreover, promises of specific treatment in specific situations found in an employee manual or handbook issued by an employer to his or her employees may, in appropriate situations, obligate the employer to act in accord with those promises.

(Citation omitted.)

Whether the employee manual in *Thompson* created promises of specific treatment in specific situations and whether the employee justifiably relied on those promises were questions of material fact for the jury. Whether these

provisions were part of the employee's contract was also a question of fact for the jury. *Thompson,* at 233–34.

*Brady v. Daily World,* 105 Wn.2d 770, 773, 718 P.2d 785 (1986) applied the holding in *Thompson.* Like the discharged employee in *Thompson,* the employee in *Brady* had no written contract with his employer, but a personnel policy handbook contained a section on dismissal for cause. *Brady,* at 772. The court reversed the summary judgment remanding for trial after concluding Mr. Brady had made out a case: the personnel handbook referred to dismissal for cause after careful consideration of all known facts and there were material issues of fact on whether Mr. Brady was discharged for the alleged cause of intoxication. *Brady,* at 775–76.

*Brady* emphasized the language in *Thompson* explaining the rationale for its holding:

> When the employment relationship is not evidenced by a written contract and is indefinite in duration, the parties have entered into a contract whereby the employer is essentially obligated to only pay the employee for any work performed. In this contractual relationship, the employer exercises substantial control over both the working relationship and his employees by retaining independent control of the work relationship. Thus, the employer can define the work relationship. Once an employer takes action, for whatever reasons, an employee must either accept those changes, quit, or be discharged. Because the employer retains this control over the employment relationship, unilateral acts of the employer are binding on his employees and both parties should understand this rule.
>
> However, absent specific contractual agreement to the contrary, we conclude that the employer's act in issuing an employee policy manual can lead to obligations that govern the employment relationship.

*Brady,* at 773–74 (quoting *Thompson v. St. Regis Paper Co., supra*).

Here, if Mr. St. Yves' employment contract is read to create no term of employment beyond that which Mid State Bank allows without terminating him, Mr. St. Yves is

in no better position than an at–will employee without any written contract. Therefore, the rationale for the holdings in *Thompson* and *Brady* applies here.

In *Armstrong,* at 185, this court held there was no implied covenant of good faith and fair dealing which would prevent the employee's discharge for other than just cause. It found an employee manual revised during the employee's term and approved by the board did not give rise to an implied covenant of good faith and fair dealing because there was no evidence the employee manual applied to this employee. In *Armstrong* we reasoned an employee's subjective understanding that he will not be discharged without cause is insufficient to establish an implied agreement to that effect. As noted earlier, this case is distinguishable from *Armstrong* because the employee discharged was covered by an employment contract with a term of 1 year which had been properly terminated, unlike Mr. St. Yves' contract. Also, here there is evidence in the record, in the form of an affidavit from Mr. St. Yves' predecessor, stating his belief the personnel policy manual applied to Mr. St. Yves' position.

Mid State Bank's personnel policy manual is in the record. The manual contains sections providing for informal counseling (if an employee's performance or conduct fails to meet specified requirements); for written warning and counseling (in the event of a repeated or serious problem, either in performance or conduct); probation (in cases of major job performance or conduct problem, or continued lack of improvement in performance or conduct); and discharge (for failure to achieve the specified results in the probation period). There are also provisions for suspension and for immediate discharge (when the offense is so serious in nature an employee will be discharged for the first violation).

No cause for Mr. St. Yves' discharge was given by Mid State Bank. Yet, these provisions could reasonably be interpreted to give an employee an expectation he will be discharged only for cause. However, we need not decide this

matter on appeal of a CR 12(b)(6) dismissal because whether the personnel policy manual created a right to continued employment unless discharged for cause is a question for the jury. We hold it was improper to dismiss the case on a CR 12(b)(6) motion for failure to state a claim. Additionally, it would have been improper to dismiss this case on summary judgment because there are material issues of fact for the jury.

The judgment of the superior court is reversed; this case is remanded for trial.

GREEN and THOMPSON, JJ., concur.

Review granted by Supreme Court April 5, 1988.