[No. 54790–4.    En Banc.    July 15, 1988.]

ROBERT ST. YVES, *Respondent,* v. MID STATE BANK,
*Petitioner.*

*Michael R. Tabler,* for petitioner.

*Carlson & Drewelow, P.S.,* by *Paul James,* for respondent.

UTTER, J.—The trial court dismissed a claim of wrongful discharge by a former president of Mid State Bank. The Court of Appeals reversed. We hold the trial court properly dismissed the claim, as the unambiguous terms of the former president's written employment contract allowing termination at will make irrelevant the provisions of the bank's personnel policy manual.

Mid State Bank hired Robert St. Yves as its president and chief executive officer on June 1, 1984, pursuant to a written employment agreement. The agreement contains three pertinent clauses:

## II
### TERM

The initial term of St. Yves' employment shall be from the 1st day of June, 1984 to the 31st day of May, 1986. Said term shall be automatically renewed for successive one year terms unless either party advises the other with 60 days written notification that the employment, or this agreement in its then current form, will not be renewed at the end of the term.

. . .

## X
### TERMINATION

St. Yves' right to compensation will cease upon termination of his employment for any reason, and the term hereof shall thereupon end. Upon such termination, he will be entitled to receive his base salary accrued to the date of termination together with such additional fringe benefits which he would otherwise have been entitled to receive for such year, accrued to the date of termination.

St. Yves' termination by bank at any time, during any term of employment, with or without cause or notice, shall not constitute a breach of this agreement by bank.

## XI
### ENTIRE AGREEMENT

The foregoing constitutes the entire agreement between the parties and no modification of any of the provisions hereof shall be binding upon either St. Yves or

bank unless in writing, signed by the party against whom such modification is sought to be enforced.

On May 5, 1986, 27 days before the initial term of employment was to expire, the bank's board of directors held a special meeting at which they voted to terminate St. Yves' employment. The bank did not state its reasons for terminating St. Yves. Shortly thereafter St. Yves sued the bank, alleging violation of the employment agreement and violation of the bank's personnel policy manual, which he claimed had become a part of the employment agreement. The personnel policy manual provides for informal counseling if an employee's performance fails to meet requirements, written warning and formal counseling in the event of a repeated or serious problem, probation in cases of a major job performance or conduct problem, and discharge for failure to achieve the specified results within the probation period. Only flagrant disregard for policies and practices, such as gross insubordination or physical violence, warrant immediate discharge under the personnel policy manual.

The bank moved to dismiss St. Yves' complaint under CR 12(b)(6), asserting it had the right to terminate St. Yves at will under the terms of the employment agreement. St. Yves filed an affidavit in response, asserting it was his understanding that he would not be terminated absent just cause pursuant to the bank's personnel policy manual. St. Yves' response also included an affidavit by the former president of the bank, stating that when he drafted the personnel policy manual in 1984 he intended that the president of the bank be covered by the manual.

The trial court dismissed the action under CR 12(b)(6), finding St. Yves had failed to state a claim for wrongful discharge or breach of contract. The bank appealed, and the Court of Appeals reversed, finding a question of fact existed as to whether St. Yves was protected from discharge at will by the terms of the personnel policy manual. *St. Yves v. Mid State Bank*, 50 Wn. App. 95, 748 P.2d 633 (1987). This court granted the bank's petition for review.

Although the trial court dismissed this action under CR 12(b)(6) for failure to state a claim, it did not exclude St. Yves' supporting affidavits. We therefore treat this matter as a summary judgment, applying the following rule:

> If, on a motion asserting . . . [failure] to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in rule 56 . . .

CR 12(b). In ruling on a motion for summary judgment, we must consider the material evidence and all reasonable inferences therefrom in favor of St. Yves. *See Klinke v. Famous Recipe Fried Chicken, Inc.,* 94 Wn.2d 255, 256, 616 P.2d 644 (1980).

The parol evidence rule provides:

> [P]arol or extrinsic evidence is not admissible to add to, subtract from, vary, or contradict written instruments which are contractual in nature and which are valid, complete, unambiguous, and not affected by accident, fraud, or mistake.

*Emrich v. Connell,* 105 Wn.2d 551, 555–56, 716 P.2d 863 (1986), quoting *Buyken v. Ertner,* 33 Wn.2d 334, 341, 205 P.2d 628 (1949).

St. Yves does not allege the employment agreement is invalid, incomplete or affected by accident, fraud, or mistake. He alleges, however, that the agreement is ambiguous as to term of employment and termination. It is both possible and reasonable to read the employment agreement between St. Yves and the bank as internally consistent and not ambiguous. Ambiguity will not be read into a contract if it can reasonably be avoided. *McGary v. Westlake Investors,* 99 Wn.2d 280, 285, 661 P.2d 971 (1983).

St. Yves asserts that paragraphs II and X of the employment agreement create an ambiguity. However, paragraph II has to do with the term of employment, whereas paragraph X is a more specific clause dealing with discharge. It qualifies the rest of the agreement, including paragraph II, by stating explicitly: "St Yves' termination by

bank at any time, *during any term of employment,* with or without cause or notice, shall not constitute a breach of this agreement by bank." (Italics ours.) The phrasing of paragraph X indicates the parties to the agreement did not find any contradiction between the existence of set terms of employment and discharge in the middle of one of those terms. *See Kemper v. First Nat'l Bank,* 94 Ill. App. 3d 169, 418 N.E.2d 819 (1981) (the power to contract for a definite term is consistent with the power to discharge an employee before the end of the term). Paragraph II creates only a presumptive term of employment, which may be terminated under the procedures of paragraph X. Thus, each clause of the employment agreement can be given effect, and it is not ambiguous.

Although parol evidence may be admitted to show a contract is not integrated, it is not admissible to create an ambiguity. *Washington Fish & Oyster Co. v. G.P. Halferty & Co.,* 44 Wn.2d 646, 659, 269 P.2d 806 (1954). "It is the function of the court to examine a contract to determine whether it is either so ambiguous or incomplete as to admit of parol evidence to ascertain the intent of the parties." *Halferty,* at 659. Here, it appears that the personnel policy manual would create an ambiguity as to whether cause is required for termination; that ambiguity does not exist in the terms of the employment agreement. The personnel policy manual is therefore inadmissible.

The Court of Appeals found there was a question of fact for the jury to determine if the personnel policy manual created an independent basis for a wrongful discharge claim, even assuming the employment agreement was unambiguous. It relied on this court's holdings in *Thompson v. St. Regis Paper Co.,* 102 Wn.2d 219, 685 P.2d 1081 (1984) and *Brady v. Daily World,* 105 Wn.2d 770, 718 P.2d 785 (1986) to find a right to continued employment in the terms of a personnel policy manual on which an employee relies.

> [P]romises of specific treatment in specific situations found in an employee manual or handbook issued by an employer to his or her employees may, in appropriate situations, obligate the employer to act in accord with those promises.

*Thompson,* at 233.

■ Both *Thompson* and *Brady* involve employment situations in which there were no written employment contracts, and are thus facially distinguishable from the instant case. Our opinions in both cases specifically qualify the holdings to apply only where there is no contrary contractual term:

> [A]bsent specific contractual agreement to the contrary, we conclude that the employer's act in issuing an employee policy manual can lead to obligations that govern the employment relationship.

*Thompson,* at 229, *quoted in Brady,* at 774. The right, identified in *Thompson* and *Brady,* to rely on promises in personnel policy manuals does not override the application of the parol evidence rule.

This court recently underscored the preemptive effect of specific contractual terms in *Willis v. Champlain Cable Corp.,* 109 Wn.2d 747, 748 P.2d 621 (1988), in which we held that an implied covenant of good faith in the absence of unconscionability or illegality cannot override express contract terms outlining how commissions will be paid when an employee is terminated. *Willis,* at 757.

> In the absence of unconscionability or illegality, the law requires enforcement of a contract as written.
> The bargain as struck should be enforced. Only by doing so can we be certain that the balance of advantages and disadvantages struck by each party in the bargain they reached is implemented. Not to implement this balance would deprive the parties of their bargain and impair their freedom to contract as they wish.

*Willis,* at 757, quoting *Balzer/Wolf Assocs. v. Parlex Corp.,* 753 F.2d 771, 774–75 (9th Cir. 1985).

Because we dispose of this case on the basis of the parol evidence rule, the bank's arguments concerning its authority to contract, which were not, in any event, properly presented by the record, are not considered.

Mid State Bank is entitled to summary judgment dismissal of St. Yves' claim of wrongful dismissal and breach of contract.

PEARSON, C.J., and BRACHTENBACH, DOLLIVER, ANDERSEN, CALLOW, and DURHAM, JJ., concur.

DORE, J. (dissenting)—I dissent.

The majority holds that St. Yves was subject to termination at will regardless of the terms of Mid State's personnel policy manual. It bases this conclusion on an isolated term in St. Yves' employment contract, despite the fact that that contract is ambiguous on its face and despite the fact that the personnel manual is needed to resolve the contract's ambiguity. In fact, the majority's supposed reconciliation of the contract's conflicting terms demonstrates not only that the contract is ambiguous but also that the employee manual is needed to resolve that ambiguity. Since an issue of fact exists as to whether the contract and the employee manual restrict the right of the Bank to terminate St. Yves as it has done, I would remand the case for trial.

### THE CONTRACT IS AMBIGUOUS

Paragraph II of the employment contract between St. Yves and Mid State provides that he shall be employed for 2 years and that that term will be renewed automatically if neither side gives notice of nonrenewal 60 days before the contract's expiration. The Bank gave no notice within the prescribed period and St. Yves' contract had been renewed for a second 2–year term when the Bank purported to discharge him. If paragraph II stood alone in this contract, there would be no question that the contract had been breached. St. Yves would have been deprived of job security he had evidently bargained for. Paragraph II, which is

unambiguous in itself, serves no other purpose than to ensure St. Yves' employment for the agreed–on term.

Paragraph II does not stand alone, however. As the majority points out, paragraph X provides that St. Yves can be discharged for any reason, at any time and that such a termination "shall not constitute a breach of this agreement by bank." The obvious question is: if this is so, why did the parties adopt paragraph II? What paragraph II gives, paragraph X takes away and vice versa. One provision can be given effect only by depriving the other of all force. Read together, they make no sense. In other words, the two paragraphs render the contract ambiguous.

The majority attempts to avoid this obvious conclusion.

> St. Yves asserts that paragraphs II and X of the employment agreement create an ambiguity. However, paragraph II has to do with the term of employment, whereas paragraph X is a more specific clause dealing with discharge. It qualifies the rest of the agreement . . . Paragraph II creates only *a presumptive term of employment,* which may be terminated under the procedures of paragraph X. Thus, each clause of the employment agreement can be given effect, and it is not ambiguous.

(Italics mine.) Majority, at 377–78.

This argument only demonstrates that paragraphs II and X *do* render the contract ambiguous. The majority recognizes that a true resolution of an apparent contract ambiguity may limit the effect of one or another of the inconsistent terms, but that it must give some effect to each. A purported resolution which, in contrast, gives one contract term absolute priority over another simply points up the contract's ambiguity by confirming that the conflicting provisions are indeed irreconcilable. Consequently, in attempting to reconcile these two inconsistent terms, the majority suggests that paragraph X permits paragraph II some scope to operate as a "presumptive term of employment." On close examination, however, the majority's purported "resolution" of the contract's ambiguity turns out to

be the second, specious kind of resolution because it gives paragraph X absolute priority over paragraph II.

This can be demonstrated by asking an obvious question: What is a "presumptive term of employment"? If that term has any meaning at all, the presumption cannot be one which is rebutted by the employer's decree alone. If the employer can simply dismiss the employee unilaterally, there is no "presumption" of employment at all. Unless the employer carries a real burden of justification, paragraph II has no force or effect. Unless this "presumption" of continued employment actually entitles the employee to something—a right to notice and an opportunity to speak, probation and review, and so on—it is not even a bump on the road to the unemployment office.

The majority attempts to give some body to its ghostly "presumption" when it writes that St. Yves was terminated "under the procedures of paragraph X." But those "procedures" consist of a right to termination pay, not the rights—an explanation, an opportunity to speak, probation and review or some right of appeal—which would place a real burden of justification on the employer and give meaning and content to the "presumption" of continued employment purportedly contained in paragraph II.

In fact, the majority's "presumptive term of employment" is an illusion and its interpretation of paragraph II simply reads that paragraph out of the contract. The majority's enforcement of paragraph X is simply an arbitrary preference of one of two inconsistent contract terms. According to the majority, the Bank has the right to terminate St. Yves' employment unilaterally and this right is unfettered—regardless of the 2-year term of employment granted in paragraph II. However, the majority's giving one inconsistent term complete priority over another in this way only confirms that the terms are indeed irreconcilable, and confirms that the contract is ambiguous.

## THE EMPLOYMENT MANUAL CAN RESOLVE
### THE AMBIGUITY

The majority is on the right track in its attempt to reconcile paragraphs II and X, but it refrains from drawing the logical conclusion of its argument: the Bank's employee manual is necessary to transform paragraph II's "presumptive term of employment" into a meaningful contract term.

The place of the employee manual in the analysis of this case can best be explained by considering our prior holdings in *Thompson v. St. Regis Paper Co.,* 102 Wn.2d 219, 685 P.2d 1081 (1984) and *Brady v. Daily World,* 105 Wn.2d 770, 718 P.2d 785 (1986). The majority is correct that neither of those cases involved a written employment contract. It does not follow, however, that they have no bearing on this case. Those cases demonstrate that the employment manual is relevant to determining the intent of St. Yves and Mid State, given that their written agreement is ambiguous.

In *Thompson,* we declined to hold that all employment relationships have an implied covenant of good faith such that termination must always be for cause. However, we also declined to leave the "terminable at will" doctrine in full force. Instead, we held that, depending on the facts of the particular case, the employer's actions vis–a–vis the employee may result in the creation of an implied promise not to terminate except for cause.

> Therefore, we hold that if an employer, for whatever reason, creates an atmosphere of job security and fair treatment with promises *of specific treatment in specific situations* and an employee is induced thereby to remain on the job and not actively seek other employment, those promises are enforceable components of the employment relationship.

*Thompson,* at 230. We applied the same rule in *Brady.* In both *Thompson* and *Brady* we remanded for further proceedings in light of the fact that the employer had promulgated an employee manual which arguably gave rise to such a covenant.

In the present case, there is an express contract of employment, but on the subject of duration of employment and the manner of discharge, it is ambiguous. It is therefore necessary to consider parol evidence in order to resolve that ambiguity. *Ladum v. Utility Cartage, Inc.*, 68 Wn.2d 109, 411 P.2d 868 (1966). Is the employee manual promulgated by Mid State relevant, admissible parol evidence on this question? *Thompson* and *Brady* clearly indicate that it is. If such a manual can give rise to an implied covenant of good faith and termination only for cause, it certainly is relevant and admissible to resolve an ambiguity on that point in an express contract. The manual may be just what the majority's analysis suggests it is: the employee rights that give meaning and content to paragraph II's "presumptive term of employment".

Two points need emphasis here. First, the manual is not being used to create an ambiguity in the contract; that ambiguity exists on the face of the contract because paragraphs II and X are flatly inconsistent with one another. The manual is needed to resolve that ambiguity. Second, the manual is not determinative; I do not suggest that we simply read the manual into the contract. However, the manual clearly is relevant evidence of the parties' intent, to be considered along with other such evidence on remand.

This case is distinguishable from our recent decision in *Willis v. Champlain Cable Corp.*, 109 Wn.2d 747, 748 P.2d 621 (1988). In that case, the plaintiff claimed he was entitled to commissions on sales made after his discharge under the Restatement's "procuring cause rule." *See* Restatement (Second) of Agency § 454, at 370 (1958). We declined to read such a provision into the contract in light of the fact that the contract explicitly provided for calculation of commissions due on termination. We were presented with an unambiguous contract with an unambiguous governing term which controlled the matter. We therefore declined to go outside the four corners of the employment contract. In the present case, however, we have an ambiguous employment contract and relevant evidence which may permit a

lower court to resolve the ambiguity. The proper course is clearly to remand for consideration of that evidence.

CONCLUSION

The employment contract is ambiguous on its face. Parol evidence is required to resolve the ambiguity. The Bank's personnel policy manual is relevant to the issue of resolving the ambiguity. I would therefore remand this case for further proceedings in accord with our previous holdings in *Thompson* and *Brady*.

GOODLOE, J., concurs with DORE, J.