[No. 32407-5-II.   Division Two.   February 22, 2006.]

CLINT W. DICE, *Respondent*, v. THE CITY OF MONTESANO, *Appellant*.

678

*Daniel O. Glenn* (of *Glenn & Associates, P.S.*), for appellant.

*Rhys A. Sterling*, for respondent.

¶1 VAN DEREN, A.C.J. — The city of Montesano (City) appeals the trial court's decision awarding City employee Clint Dice three months' severance pay and attorney fees under his employment contract with the City. It argues that the trial court (1) did not give effect to the contract's plain meaning, (2) erred when it ruled severance pay constituted salary or wages under RCW 49.48.030, and (3) did not properly segregate its legal fee award. Dice cross-appeals, claiming the court erred when it did not grant him double damages and all his requested attorney fees, including those for discovery and negotiations incurred before he filed the lawsuit. We affirm the trial court's award of severance pay as wages and the award of attorney fees incurred in the successful contract claim. We reverse the court's denial of double damages to Dice under RCW 49.52.050 and .070. And we remand for further hearings to determine and award Dice additional fees and costs related to discovery, case preparation, and his double damages claims, but not negotiations, incurred prior to filing the lawsuit.

## FACTS

### I. SUBSTANTIVE FACTS

¶2 On August 19, 1996, Dice entered into an employment contract with the City as Public Works Director. Under the contract, Dice was an "at will" employee.[1] Clerk's Papers (CP) at 10. The contract contained a termination clause that specified that if the City terminated Dice without cause, the City had to pay him a lump sum payment equal to three months' salary.[2] If Dice elected to terminate the

---

[1] The clause read: "THIS MEMORANDUM OF UNDERSTANDING is intended to set forth all the terms and conditions of 'At Will' employment between the CITY OF MONTESANO . . . and PUBLIC WORKS DIRECTOR . . . ." Clerk's Papers (CP) at 10.

[2] The termination clause read: "In the event the DIRECTOR is terminated for any reason other than for cause . . . the CITY agrees to pay the DIRECTOR a

contract, he agreed to give 30 days' notice, and the City would not owe him the three months' salary. The contract also stated that it was to remain in force on a year-to-year basis, but that either party could terminate it with 30 days' notice.[3]

¶3 On July 8, 2003, the City notified Dice that it planned to terminate his employment effective August 19, the "anniversary date of the contract." CP at 16. The City refused to pay Dice the lump sum payment equal to three months' salary, which caused Dice to file suit. It is undisputed that the City terminated Dice without cause.

## II. PROCEDURAL FACTS

¶4 At trial, Dice moved for summary judgment, arguing that the City breached its contract with him when it failed to pay him the three months' salary required by the contract. He alleged that because it terminated him without cause, the City owed him $18,357 (three times his monthly salary of $6,119). He further argued that the City violated RCW 49.52.050(2),[4] which entitled him to double damages and attorney fees under RCW 49.52.070.[5]

---

lump sum payment equal to three (3) months' salary, plus any accrued vacation . . . ." CP at 13.

[3] The duration clause read: "This Memorandum of Understanding shall become effective August 19, 1996, and remain in full force and effect, *from year to year*, provided that either party reserves the right to terminate this Memorandum of Understanding with thirty days' written notice." CP at 14 (emphasis added).

[4] RCW 49.52.050 reads in pertinent part:

Any employer or officer, vice principal or agent of any employer, whether said employer be in private business or an elected public official, who . . .

(2) Wilfully and with intent to deprive the employee of any part of his wages, shall pay any employee a lower wage than the wage such employer is obligated to pay such employee by any statute, ordinance, or contract . . .

Shall be guilty of a misdemeanor.

[5] RCW 49.52.070 states:

Any employer and any officer, vice principal or agent of any employer who shall violate any of the provisions of subdivisions (1) and (2) of RCW 49.52.050 shall be liable in a civil action by the aggrieved employee or his assignee to judgment for twice the amount of the wages unlawfully rebated or withheld by way of exemplary damages, together with costs of suit and a reasonable sum for attorney's fees: PROVIDED, HOWEVER, That the benefits of this section shall

¶5 The City also moved for summary judgment, arguing that the duration clause of the contract entitled it to terminate Dice's employment on the contract anniversary date without paying him three months' salary. Specifically, it stated that it was a year-to-year contract and at the end of each year, it could terminate Dice's employment without regard to the termination clause.

¶6 The court found no genuine issues of material fact and, in a letter opinion, granted Dice's motion for summary judgment. The court stated: "It is agreed that Mr. Dice could be terminated with or without cause. Also, the City did not conduct annual reviews to determine whether the contract should be renewed each year. The contract of employment just automatically continued with no action by either party." CP at 117. The court further held that since the contract was "somewhat ambiguous," the City had enough uncertainty to argue its position in good faith. CP at 123. Thus, it did not grant Dice's claim for double damages and attorney fees under RCW 49.52.050 and .070. Finally, the court stated: "It is apparent to me that the City of Montesano drafted the contract . . . . Therefore, under the facts and circumstances of this case, I interpret the contract to require the City of Montesano to pay Mr. Dice a lump sum payment equal to three months' salary." CP at 118.

¶7 Dice moved for reconsideration of the court's decision denying him attorney fees. The City also moved for reconsideration, arguing that the trial court failed to follow the plain meaning of the contract. In a second letter opinion, the court denied the City's motion, but it granted Dice's and agreed to hear argument on attorney fees. After that hearing, the court issued a third letter opinion, in which it granted Dice attorney fees based on the actual costs of litigating his successful claim for the three months' salary.

¶8 Dice requested $10,097 as his reasonable fees. In addition to his attorney's hourly billing breakdown for the litigation, the figure included costs associated with (1) an

not be available to any employee who has knowingly submitted to such violations.

attorney Dice initially hired to represent him (he later changed attorneys), (2) fees incurred in prefiling negotiations between the City and Dice, and (3) costs incurred for obtaining and reviewing his personnel records in order to rule out discharge for cause by the City. Dice's attorney specifically identified the time he spent working on the contract interpretation and the double damages issues. In its award of fees and costs, the court held that Dice was entitled to (1) the fees incurred after filing the lawsuit and (2) the fees associated with his successful contract interpretation claim. And it awarded Dice a total of $8,166.25 in fees and costs.

¶9  The City timely appeals. Dice cross-appeals.

## ANALYSIS

### I. STANDARD OF REVIEW

■■  ¶10  When reviewing an order of summary judgment, we engage in the same inquiry as the trial court. *Grundy v. Thurston County*, 155 Wn.2d 1, 6, 117 P.3d 1089 (2005). Summary judgment is appropriate only if the pleadings, affidavits, depositions, and admissions on file demonstrate the absence of any genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. CR 56(c). The court must consider all facts submitted and all reasonable inferences from them in the light most favorable to the nonmoving party. *Grundy*, 155 Wn.2d at 6 (quoting *Highline Sch. Dist. No. 401 v. Port of Seattle*, 87 Wn.2d 6, 15, 548 P.2d 1085 (1976)). The court should grant the motion only if, from all the evidence, reasonable persons could reach but one conclusion. *Lilly v. Lynch*, 88 Wn. App. 306, 312, 945 P.2d 727 (1997).

### II. CONTRACT INTERPRETATION

■■  ¶11  "In construing a written contract, the basic principles require that (1) the intent of the parties controls; (2) the court ascertains the intent from reading the contract

as a whole; and (3) a court will not read an ambiguity into a contract that is otherwise clear and unambiguous." *Mayer v. Pierce County Med. Bureau, Inc.*, 80 Wn. App. 416, 420, 909 P.2d 1323 (1995). Contract interpretation is a question of law only when "(1) the interpretation does not depend on the use of extrinsic evidence, or (2) only one reasonable inference can be drawn from the extrinsic evidence." *Tanner Elec. Coop. v. Puget Sound Power & Light*, 128 Wn.2d 656, 674, 911 P.2d 1301 (1996).

¶12 A contract is ambiguous if its terms are uncertain or they are subject to more than one meaning. *Mayer*, 80 Wn. App. at 421. A provision is not ambiguous simply because the parties suggest opposing meanings. *Mayer*, 80 Wn. App. at 421. Interpretation of an unambiguous contract is a question of law; thus, summary judgment is appropriate. *Mayer*, 80 Wn. App. at 420.

¶13 Here, although the parties suggest different interpretations of Dice's employment agreement, both assert that it is not ambiguous.[6] The City relies on our Supreme Court's decision in *St. Yves v. Mid State Bank* in which the court held that two separate provisions in an employment contract were independent of one another and did not create an ambiguity. 111 Wn.2d 374, 378, 757 P.2d 1384 (1988), *overruled on other grounds by Berg v. Hudesman*, 115 Wn.2d 657, 801 P.2d 222 (1990). The contract at issue in *St. Yves* also included both a duration provision and a termination provision. 111 Wn.2d at 375. The duration provision stated that the employee's employment would last year-to-year and would be automatically renewed unless the employer provided 60 days' notice of nonrenewal. *St. Yves*, 111 Wn.2d at 375. The termination clause provided that the employer could terminate the employee at any time with or without notice or cause. *St. Yves*, 111 Wn.2d at 375-76. When the employer invoked the termination clause,

---

[6] Neither party argues that the terms of the agreement are ambiguous based on the trial court's ruling on Dice's claim for double damages. There, the court concluded that the contract was "somewhat ambiguous," thus creating sufficient uncertainty for the City to argue in good faith that it did not owe Dice the three months' salary. CP at 123.

the employee claimed that the employer breached the duration clause. The court held that these two provisions did not conflict and each "clause of the employment agreement can be given effect." *St. Yves*, 111 Wn.2d at 378. In short, the court found that the annual term clause merely created a "presumptive term of employment" but the employer could still terminate at anytime. *St. Yves*, 111 Wn.2d at 378.

¶14 Here, the City argues that the trial court should have given independent effect to the duration and termination clauses. Further, it argues that the trial court should have interpreted the contract according to what the City considered the contract's plain meaning, allowing the City to terminate Dice's employment without penalty during the agreement's anniversary month.

¶15 We agree with the parties; the contract is unambiguous and the trial court could grant summary judgment by interpreting the plain meaning of the agreement without resort to extrinsic evidence. *Tanner Elec.*, 128 Wn.2d at 674. If a contract can reasonably be interpreted in two ways, one of which is ambiguous and one of which is not, the latter interpretation should be adopted when each clause can be given effect. *See St. Yves*, 111 Wn.2d at 378.

¶16 Reading the termination and duration clauses together, as we must, it is clear that either the City or Dice could terminate the agreement on 30 days' written notice at any time. *See, e.g., Tanner Elec.*, 128 Wn.2d at 674. The duration clause reserved the right for either party to terminate the contract with 30 days' notice, regardless of the annual term. Thus, according to *St. Yves*, the annual term was merely presumptive. 111 Wn.2d at 378. And although the duration clause stated that the contract ran from "year to year," in light of the whole contract, the phrase really meant "indefinitely." Here, the "year to year" portion of the duration clause was surplusage since it was qualified by a clause giving either party the right to terminate the employment contract on 30 days' notice. CP

at 14. Upon termination, the lump sum payment provisions of the termination clause were applicable.

¶17 Furthermore, the contract contained a clause stating that Dice was an "employee at will." CP at 10. And at-will employment contracts are not contracts for a specified time period. *Roberts v. Dudley*, 140 Wn.2d 58, 63, 993 P.2d 901 (2000). The only other mention of annual review in the contract was contained in the compensation provision, which was based on a calendar year and not the date of hire stated in the duration provision.

¶18 The City's administration of the contract also supports our interpretation of the duration clause. *See Berg*, 115 Wn.2d at 666-67 (the court may review extrinsic evidence to aid in the determination of the parties' intent in an unambiguous contract); *Tanner Elec.*, 128 Wn.2d at 674 (where only one reasonable inference can be drawn from the extrinsic evidence, interpretation of a contract is a question of law). The City did not conduct annual performance reviews of Dice, nor did it formally renew the contract every year. Rather, Dice's employment continued with no action by either party. There is no extrinsic evidence showing that either party intended the phrase "from year to year" to mean anything other than indefinite, ongoing employment. CP at 14.

¶19 The agreement here clearly stated that if the City terminated Dice's employment for any reason other than cause, the City was required to pay him three months' salary. The City did not, as it argued on appeal, reserve to itself a window of time around the anniversary date of the agreement when it could avoid its obligation to pay Dice the three months' salary if it terminated him without cause. To infer such a term would create additional provisions in the contract, which we cannot do. *Universal Land & Constr. Co. v. City of Spokane*, 49 Wn. App. 634, 637, 745 P.2d 53 (1987) ("[C]ourts should not make another or different contract for the parties under guise of construction."). That inference would negate the clear benefit the City bestowed upon Dice in the termination clause.

¶20 Finally, adding a provision to the duration clause that creates a window of time when the City could terminate Dice without reference to the termination clause would create an absurd result. Under this rationale, there would technically be a day each year or an indeterminate number of days each year when the termination clause was read out of the contract. And we refuse to reach this absurd result.

¶21 Thus, in our review of the trial court's summary judgment order, we determine that reasonable persons could reach but one conclusion: the City could terminate Dice's employment with 30 days' notice at any time, but the City had to pay Dice three months' salary if it terminated his employment without cause. *Lilly*, 88 Wn. App. at 312. We hold that the trial court did not err when it required the City to pay Dice three months' salary when it terminated his employment without cause in August 2003.

### III. DOUBLE DAMAGES UNDER RCW 49.52.050 AND .070

¶22 Dice argues that he is entitled to double damages under RCW 49.52.070 and .050. RCW 49.52.070 is the enforcement provision of RCW 49.52.050. It states that any employer who violates RCW 49.52.050 shall be liable to the aggrieved employee in a civil action for twice the wages it unlawfully and willfully withheld. The employee is also entitled to costs and reasonable attorney fees for a successful claim under these statutes. RCW 49.52.070; *Bates v. City of Richland*, 112 Wn. App. 919, 938, 51 P.3d 816 (2002). The City argues that since there was a bona fide dispute over whether it had to pay Dice severance pay, the court properly found that the City did not act willfully and, therefore, the court properly denied double damages under RCW 49.52.070.

¶23 Whether or not an employer willfully withheld wages or salary is a question of fact. *Bates*, 112 Wn. App. at 939. But where the facts are undisputed and reasonable minds could not differ, we may determine the issue as a

matter of law. *State v Clark*, 129 Wn.2d 211, 225, 916 P.2d 384 (1996); *Bates*, 112 Wn. App. at 939.The trial court noted that the City itself had drafted the agreement and that the City did not conduct annual reviews during the course of Dice's employment. It also stated that the City's failure to pay Dice three months' salary was based on a "somewhat ambiguous" agreement that allowed it to argue in good faith that it did not owe Dice the money. CP at 123.

¶24 Generally, the existence of a bona fide dispute is enough to preclude a finding of willfulness. *Bates*, 112 Wn. App. at 939. But here, the court recognized that the contract required that the City pay Dice the three months' pay upon terminating his employment. And when the City ignored the unambiguous language that it had drafted, we hold that it acted willfully. Thus, we reverse the trial court's ruling and grant Dice double damages.

## IV. ATTORNEY FEES

¶25 The City argues that Dice was not entitled to attorneys fees under RCW 49.48.030 because the money awarded to Dice was liquidated damages and not salary as contemplated in the statute.

¶26 The award of attorney fees under a statute or contract is a matter of trial court discretion that we will not disturb absent a clear showing of an abuse of that discretion. *Fluke Capital & Mgmt. Servs. Co. v. Richmond*, 106 Wn.2d 614, 625, 724 P.2d 356 (1986); *Culinary Workers & Bartenders Union, Local No. 596 v. Gateway Cafe, Inc.*, 91 Wn.2d 353, 372, 588 P.2d 1334 (1979).

A. Salary or Wages Designation under RCW 49.48.030 for Attorney Fees Award

¶27 The City argues that if it did owe Dice three months' pay, the court erred in finding that the payment constituted salary or wages under RCW 49.48.030 because it was merely a lump sum payment measured by Dice's monthly salary. RCW 49.48.030 states:

In any action in which any person is successful in recovering judgment for wages or salary owed to him, reasonable attorney's fees, in an amount to be determined by the court, shall be assessed against said employer or former employer.

"RCW 49.48.030 is a remedial statute that must be construed liberally in favor of the employee." *Bates*, 112 Wn. App. at 939. We narrowly construe exceptions. *Bates*, 112 Wn. App. at 939.

¶28 The statute itself does not define wages, but Washington case law has applied the definition from RCW 49.46.010(2), which states: " 'Wage' means compensation due to an employee by reason of employment." *See, e.g., Bates*, 112 Wn. App. at 939-40 (quoting *Hayes v. Trulock*, 51 Wn. App. 795, 806, 755 P.2d 830 (1988)). In *Barrett v. Weyerhaeuser Co. Severence Pay Plan*, we defined severance pay as " 'remuneration for the service rendered during the period covered by the agreement.' " 40 Wn. App. 630, 633, 700 P.2d 338 (1985) (quoting *Owens v. Press Publ'g Co.*, 20 N.J. 537, 120 A.2d 442, 447 (1956)). Because it is a remedial statute, our courts have interpreted RCW 49.48.030 broadly, demonstrating that the award of attorney fees under the statute is not limited to judgments only for wages and salaries earned for work performed but, rather, such fees are recoverable for any type of compensation due by reason of employment. *Bates*, 112 Wn. App. at 940; *see, e.g., Gaglidari v. Denny's Rests., Inc.*, 117 Wn.2d 426, 450-51, 815 P.2d 1362 (1991) (breach of employment contract); *Naches Valley Sch. Dist. No. JT3 v. Cruzen*, 54 Wn. App. 388, 399, 775 P.2d 960 (1989) (breach of labor contract).

¶29 Here, the three months' salary due Dice constitutes "wages" because it derives solely from Dice's employment contract with the City and the amount was calculated according to his employment earnings at the time of discharge. An employee need not be currently employed to recover statutory attorney fees in a successful action against an employer for wages or salary. *Bates*, 112 Wn. App at 940. Furthermore, the City's interpretation would suggest that an employer could refuse to pay bargained-for

severance pay with impunity. The purpose of the attorney fee provision in RCW 49.48.030 is to allow an employee to protect his or her rightful wages and ensure payment. *Bates*, 112 Wn. App at 939. Thus, the court did not err when it determined that, as the prevailing party, Dice was entitled to attorney fees under RCW 49.48.030.

B. Segregation of Fees between Contract Claim and Double Damages Claim at Trial

¶30 The City argues that if the court did not err when it awarded Dice attorney fees, it erred when it failed to segregate or reduce his claimed fees to distinguish between fees incurred on the successful contract claim and those incurred in pursuing double damages under RCW 49-.52.070. It contends that significant fees were incurred in researching Dice's personnel records to rule out termination for cause and that this information did not relate to Dice's successful claim.

■■■ ¶31 Where attorney fees are recoverable on only some of a party's claims, the award must properly reflect a segregation of the time spent on the varying claims. *Hume v. Am. Disposal Co.*, 124 Wn.2d 656, 672, 880 P.2d 988 (1994). The court must separate time spent on theories essential to the successful claim and time spent on theories relating to other causes of action. *Hume*, 124 Wn.2d at 673 (quoting *Travis v. Wash. Horse Breeders Ass'n*, 111 Wn.2d 396, 410-11, 759 P.2d 418 (1988)). If the court finds that claims are so related that segregation is not reasonable, then it need not segregate the attorney fees. *Hume*, 124 Wn.2d at 673.

¶32 Here, the court determined that Dice's counsel had made a good faith effort to eliminate time spent on the double damages theory and thus awarded fees based on his designation. The court also subtracted fees Dice incurred prior to filing his suit against the City and awarded $8,166.25 as reasonable fees related to Dice's successful contract claim.

¶33 The record reflects that Dice's attorney identified and deducted the time spent researching and arguing the double damages theory. Dice's attorney declared under penalty of perjury that his time and billing submission was a true and correct summary of the time spent and fees incurred for Dice's successful contract claim. The City points to no evidence that the attorney's designations are inaccurate. Nor does the City show that the court awarded fees to Dice for his double damages claim under RCW 49-.52.050 and .070. Thus, the court properly segregated the fees and did not abuse its discretion when it awarded attorney fees to Dice.

¶34 And in light of our holding that Dice is entitled to double damages under RCW 49.52.050 and .070, he is also entitled to the attorney fees incurred in pursuit of that claim. Thus, although the court properly segregated the fees according to its ruling, we now reverse and grant Dice fees for all his successful claims and remand for that determination.

C. Fees Incurred prior to Filing Suit

¶35 Dice argues that the court erred when it deducted attorney fees he incurred before filing suit against the City. He claims that the court should have awarded him the fees and costs related to his prefiling settlement negotiations and discovery.

¶36 RCW 49.48.030 allows reasonable attorney fees in any action in which a person is successful in recovering a judgment for wages or salary owed to him. The statute does not, however, define "action." Our Supreme Court attempted to define "action" in the context of legislative intent. In *International Ass'n of Fire Fighters, Local 46 v. City of Everett*, the court applied the *Black's Law Dictionary* definition of "action" and resolved that it is a " 'civil or criminal judicial proceeding,' 'an ordinary proceeding in a court of justice,' and 'any judicial proceeding, which, if conducted to a determination, will result in a judgment or decree.' " 146 Wn.2d 29, 40, 42 P.3d 1265 (2002) (quoting

BLACK'S LAW DICTIONARY 28-29 (7th ed. 1999)). The court further defined "action" under *American Jurisprudence* as " 'a judicial proceeding in which one asserts a right or seeks redress for a wrong.' " *Int'l Ass'n of Fire Fighters*, 146 Wn.2d at 41-42 (quoting 1 AM. JUR. 2D *Actions* § 4, at 725-26 (1994)). The court applied these definitions to RCW 49.48.030 and concluded that arbitration proceedings constituted "action" under the statute. *Int'l Ass'n of Fire Fighters*, 146 Wn.2d at 41.

¶37 When our Supreme Court extended the meaning of "action" to include arbitration, it justified its expansion based on the judicial nature of arbitration. Settlement negotiations do not carry that same judicial nature and should not be considered "action" under RCW 49.48.030. Thus, the trial court did not abuse its discretion when it failed to award Dice fees incurred during prefiling negotiations.

¶38 But to properly prosecute a claim, Civil Rule 11 requires that an attorney adequately investigate the factual basis of all claims as well as the proper and applicable legal theories.[7] In preparing for litigation, an attorney necessarily engages in discussions with the client and potential witnesses, obtains and reviews pertinent files and other information related to the client's concerns and claims, and drafts documents to initiate and file the claim in court. Attorney fee requests routinely include time records showing how much time and what costs were

---

[7] Civil Rule 11(a) reads in pertinent part:

The signature of a party or of an attorney constitutes a certificate by the party or attorney that the party or attorney has read the pleading, motion, or legal memorandum; that to the best of the party's or attorney's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) it is well grounded in fact; (2) it is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law or the establishment of new law; (3) it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation . . . . If a pleading, motion, or legal memorandum is signed in violation of this rule, the court, upon motion or upon its own initiative, may impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or legal memorandum, including a reasonable attorney fee.

incurred from the attorney's first contact with a litigant. Because our court rules require such prefiling preparation, it is a necessary and legitimate part of a judicial proceeding and, therefore, attorney fees and costs incurred during this process should be considered part of an "action" under RCW 49.48.030. Thus, Dice is entitled to fees and costs he incurred for this preparation.

¶39 The record contains plaintiff's cost bill and request for attorney fees, which reference and attach Dice's first attorney's time sheets. Although Dice's trial attorney segregated the costs and fees between the successful claims at trial, prefiling negotiations and discovery, the first attorney did not. The trial court is in the best position to obtain the necessary evidence relating to the fees and costs incurred prior to filing the lawsuit. Thus, we remand to the trial court to determine and award attorney fees and costs for the necessary and proper prefiling preparation, including all activities related to the factual bases for Dice's claims and all legal research done to investigate the proper legal bases for the claims asserted before the trial court.

D. Attorney Fees on Appeal

¶40 Dice cites RAP 18.1 and RCW 49.48.030 and/or RCW 49.52.070 and argues that he is entitled to attorney fees on appeal.

¶41 RAP 18.1 allows this court to award fees and costs where it is statutorily allowed. Both statutes grant attorney fees to an employee who is successful in a claim for wages against his employer. Since Dice prevails here, he is entitled to attorney fees on appeal upon compliance with RAP 18.1.

V. CONCLUSION

¶42 We affirm summary judgment in favor of Dice for three months' salary and the award of attorney fees on contract claims that were successful at trial, and remand for determination and award of fees and costs he incurred

before filing the lawsuit. We reverse the denial of double damages and attorney fees and costs under RCW 49.52.070 and remand for calculation and entry of an additional judgment for double damages and for fees and costs consistent with this opinion. Finally, we grant Dice attorney fees on appeal under RAP 18.1.

BRIDGEWATER and PENOYAR, JJ., concur.

Review denied at 158 Wn.2d 1017 (2006).